*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIXMOR GA WASHTENAW FOUNTAIN, LLC,

      Plaintiff-Appellee,

v

LNY INVESTMENT, INC, and YAZEN
KHASAWNEH,

      Defendants-Appellants.

UNPUBLISHED
June 22, 2023

No. 360942
Washtenaw Circuit Court
LC No. 20-000284-CB

Before: SWARTZLE, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Defendants, LNY Investment, Inc. (LNY), and Yazen Khasawneh, appeal as of right the trial court order granting the renewed motion for summary disposition in favor of plaintiff, Brixmor GA Washtenaw Fountain, LLC. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff filed a complaint alleging that it owned the Washtenaw Fountain Plaza retail shopping center in Ypsilanti. Plaintiff asserted that it entered into a lease agreement on October 26, 2016, with Kamel Daifi for a space consisting of 3,695 square feet in the center. On January 31, 2018, Daifi assigned the lease to LNY with Khasawneh purportedly guaranteeing certain obligations of LNY. LNY operated a hookah lounge in the leased space until it later defaulted on the lease by vacating the premises and failing to pay rent. Additionally, under the terms of the lease, plaintiff claimed entitlement to recoup attorney fees incurred when seeking to enforce the lease. Plaintiff pleaded breach of contract against LNY for breach of the lease and breach of contract against Khasawneh for breach of the guaranty.

In January 2022, plaintiff filed a renewed[1] motion for summary disposition under MCR 2.116(C)(10). Plaintiff, the landlord, alleged that LNY was a former tenant in light of a 2016 lease agreement and assignment wherein LNY operated the hookah business at plaintiff's rental space. The lease term was 99 months and the rent commenced on November 1, 2016. Khasawneh personally guaranteed LNY's lease obligations. According to the lease, LNY was to operate the hookah lounge from the rental space through January 2025 with monthly payments for rent, taxes, operating costs, and insurance. However, LNY ceased making payments in January 2019, a default under the terms of the lease. On April 26, 2019, plaintiff commenced a summary proceeding to recover possession. LNY stipulated to a consent judgment to return possession to plaintiff on May 16, 2019, but did not return the keys to the premises until June 3, 2019.

After obtaining possession, plaintiff claimed that it engaged in significant efforts to find a replacement tenant. Specifically, it placed a leasing sign in the window, it advertised the space on its website, and it sent emails to approximately 170 local brokers to give notice of the available space. The property was also advertised online. Additionally, plaintiff's representatives visited neighboring shopping centers to determine if a tenant would like to relocate or open a new location. Plaintiff engaged a prospective tenant interested in operating a restaurant from the premises but it did not come to fruition. Regardless, the lease contained an acceleration clause entitling plaintiff to treat any part of the rent reserved under the lease as immediately due and payable because defendants failed to pay the rent. Plaintiff requested $351,022.82, the balance due on the lease, and $27,632.06, the costs incurred to obtain enforcement of the lease terms. Plaintiff alleged that it established there was a contract (the lease agreement and guaranty), defendants breached the contract, and plaintiff suffered damages. Plaintiff submitted that discovery revealed that it attempted to mitigate its damages, that it provided leasable rental space and any water damage was not attributable to its repair responsibilities, and that laches did not bar its claims because it did not unreasonably delay in filing its complaint. Plaintiff requested summary disposition in its favor and a judgment against defendants of $378,654.88, plus additional costs and attorney fees.

Defendants opposed the dispositive motion, asserting this was not a simple contract action. Rather, when Daifi assigned his lease to LNY, Khasawneh intended to guarantee only certain obligations of LNY. Defendants claimed that, during the lease, Khasawneh made multiple attempts to notify plaintiff of issues "surrounding negotiation of the lease terms," as well as water damage to the seating area because of leakage from the exterior wall. To resolve these issues, defendants sought an appropriate reduction of rent and mitigation of any potential claim addressing future damages. Defendants submitted that there were genuine issues of material fact to be

---

[1] Plaintiff initially moved for summary disposition in June 2021. However, defendants opposed the dispositive motion, asserting that it was premature before engaging in discovery. At the hearing on the motion, defense counsel noted that two depositions were taken of plaintiff's representatives, but the transcripts were not yet received. Moreover, plaintiff had agreed to allow for the deposition of an additional employee. The trial court seemingly indicated that defendants had not met their burden of demonstrating a genuine issue of material fact and that it was prepared to rule. But, because plaintiff had agreed to the deposition of another employee, the trial court adjourned the matter to allow supplemental pleadings.

resolved at trial, including plaintiff's alleged breach of the contract regarding the condition of the premises, the attempted renegotiation of the rent issue, the actual amount of rent received from defendants, and plaintiff's failure to engage in due diligence and investigate credit worthiness before agreeing to the assignment to defendants.

Defendants alleged that they consented to leave the rental premises and attempted to secure a tenant willing to assume the lease subject to a negotiation of terms. Plaintiff participated in these negotiations and led defendants to believe that it was attempting to mitigate damages. Thus, plaintiff breached the contract and committed "failures" as the landlord. In light of their voluntary departure from the premises, their attempt to find a replacement tenant, and plaintiff's "arbitrary calculation" of alleged damages, defendants alleged the acceleration clause was exploitive and unconscionable.

Defendants further submitted that the assignment and guaranty referred to the original lease of 2016, but the terms were not reiterated or included in the terms assumed by defendants in 2018. Although defendants were required to provide gross sales to plaintiff, it did not occur. Thus, plaintiff never apprised defendants that it would be unable to earn enough proceeds to pay the monthly rent. Further, plaintiff's representatives testified that they had the option to alter the lease terms, such as rent reduction, but they did not do so. Plaintiff's failure to act in good faith and with the intent to inflate damages warranted the defense of laches. Plaintiff did not comply with the repair provisions of the lease, and the defective condition of the premises precluded it from re-leasing the premises to a new tenant. Additionally, plaintiff's first breach, regarding the failure to cure the water damage, was substantial and excused defendants' performance. The breach of the lease term and the penalty of the acceleration clause further indicated that a trial was warranted. Therefore, defendants requested that summary disposition in favor of plaintiff be denied.

The trial court heard oral argument on the motion, and after the parties argued their respective positions, it ruled:

> [O]n August 19 of 2021, the Court heard oral argument on the Plaintiff's motion for summary disposition. . . .[A]t that time, as the record reflects, the Court knew [] essentially what it wanted to do. . . . [B]ut given the parties['] agreement to depose additional witnesses, [] the Court agreed to adjourn the motion for summary disposition. Today's rescheduled motion for summary disposition[] was not to be a rehash of the arguments that had occurred on August 19[]. . . .[B]ut the pleadings were to be supplemented and clearly that's what the Court was looking for[] based upon the depositions that were taken and any evidence that would be able to support the nature of the argument and/or the argument that has just been placed into the record.
>
> Additionally, discovery is now completed and as was just stated, trial scheduled for Monday. In reviewing the case in the light most favorable [to] the Defendant[s] the Court continues to find that the Defendant's [sic] arguments are without sufficient evidence to support [them] and Plaintiff's arguments made today and on the August 19[] of 2021 [are such] that[] those arguments[] are persuasive.

The Court finds that there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law against the Defendant's [sic] jointly and severally. And that Plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10) is granted. And therefore, the bench trial scheduled for January 31[], 2022 is summarily cancelled.

The trial court entered a written order granting plaintiff's renewed motion for summary disposition "for the reasons set forth on the record."

In February 2022, defendants moved for reconsideration, reiterating the arguments in their responsive pleading. Defendants stressed that plaintiff misled the trial court into "believing" that they had seen, possessed, and were made aware of the terms of the original lease agreement. In fact, Khasawneh was unaware of the acceleration clause because he never received the original contract, and the clause itself was unconscionable. Despite these arguments, the trial court issued an opinion and order denying defendants' motion for reconsideration, determining that defendants merely presented the same issues previously ruled upon and considered. Defendants now appeal.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

The trial court's decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *Shivers v Covenant Healthcare System*, 339 Mich App 369, 377; 983 NW2d 427 (2021). An abuse of discretion occurs when the trial court's decisions falls outside the range of reasonable and principled outcomes. *Jilek v Stockson*, 297 Mich App 663, 665; 825 NW2d 358 (2012).

## III. SUMMARY DISPOSITION

Defendants first submit that the trial court erred in granting summary disposition in plaintiff's favor when there were multiple genuine issues of material fact. We disagree.

Plaintiff sought damages for defendants' breach of contract, specifically the assignment of the lease and the guaranty. In *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012), this Court delineated the following principles governing contract law:

> "The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." Issues regarding the proper interpretation of a contract or the legal

effect of a contractual clause are reviewed de novo. When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. If the language of the contract is clear and unambiguous, it must be enforced as written. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation. Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided. [Citations omitted.]

Parol evidence may not be admitted to vary the terms of an unambiguous contract. *Dunn v Bennett*, 303 Mich App 767, 776; 846 NW2d 75 (2013).

To establish an action for breach of contract, a party must show, by a preponderance of the evidence, that: (1) there was a contract; (2) the other party breached the contract; and (3) there were damages incurred by the party claiming breach. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020). A party may rescind a contract when a substantial breach occurs. See *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933). A substantial breach includes a failure to perform a substantial part of the contract or one of its essential terms. *Id*. A substantial breach also occurs when the contract would not have been executed if a party's default regarding a specific provision had been expected or contemplated. *Id*. However, any partial failure to comply with a contract does not permit the other party to immediately abandon it. *Id*. Rather, the contract must be examined to determine if the breach was material; whether the nonbreaching party obtained the benefit reasonably expected. *Holtzlander v Brownell*, 182 Mich App 716, 722; 453 NW2d 295 (1990).

## A. MUTUAL ASSENT

As an initial matter, defendants contend that mutual assent to the agreement did not occur because there is no evidence that Khasawneh received the original lease or that it was included with the assignment.

But, when interpreting a contract, this Court must ascertain the parties' intent by evaluating its plain and ordinary meaning. *McCoig Materials, LLC*, 295 Mich App at 694. And the language of the assignment refers to the original lease, seemingly indicating that defendants were aware of the original lease terms. Indeed, when a contract refers to a prior contract for further particulars, the agreements are incorporated by reference and construed together. See *Whittlesley v Herbrand Co*, 217 Mich 625, 627-629; 187 NW 279 (1922). In the recitals and terms provision of the assignment, it states:

> D.    WHEREAS, Assignor [Daifi] desires to assign its interest in the Lease to Assignee [LNY] and Assignee desires to assume all of the terms and conditions of the Lease. Upon execution by Landlord [plaintiff] of this Agreement, Landlord consents to such Agreement;
>
> *    *    *
>
> 2.    Assignment and Assumption. As of the Effective Date, Assignor does hereby sell, assign and transfer unto Assignee all its right, title and interest in the

Lease (including the Security Deposit) and the Demised Premises. Assignee hereby assumes all of the terms, covenants and conditions of the Lease, and covenants and agrees to fully and faithfully perform all of the obligations of "Tenant" under the Lease, whether arising or accruing before or after the Effective Date hereof. Without limiting the foregoing, Assignee specifically agrees to be bound by the provisions set forth in Articles XV and XVI of the Lease.[2] Assignee's assumption contained herein shall inure to the benefit of Landlord, and Assignor's continued liability under the Lease shall inure to the benefit of Landlord.

Although defendants submit that the trial court erred in assuming that they received and were aware of the terms of the original lease, defendants' blanket assertion that they did not receive it is contrary to the plain language of the assignment. The assignment repeatedly referred to the original lease and referenced particular sections of the lease to which defendants agreed. Thus, the plain language of the documents reflect that they must be construed together and enforced as written. *Whittlesley*, 217 Mich at 627-629; *McCoig Materials, LLC*, 295 Mich App at 694. As the moving party, plaintiff made and supported its motion by relying on the initial lease, the assignment, and the guaranty. Once the moving party made and supported its dispositive motion, the burden shifted to the nonmoving party to demonstrate that a genuine issue of disputed fact existed for trial. *Id*. at 693. Defendants submitted that they did not receive the original lease despite the assignment's reference to the lease and its provisions. Defendants' denial of the receipt of the lease merely appeared in the narrative portion of their pleadings, and defendants never submitted documentary evidence, such as an affidavit or deposition testimony from Khasawneh, denying receipt of the lease or any inspection of the rental property that he would assume responsibility for. Thus, defendants failed to demonstrate a lack of mutuality or assent to the terms of the original lease, the assignment, and the guaranty because they did not support their assertion in accordance with the shifting burden standards for summary disposition. *Id*.[3]

---

[2] Article XV of the lease addressed indemnity and property and liability insurance; Article XVI addressed liability of plaintiff as the landlord.

[3] Within the discussion of this issue, defendants cite to correspondence between Khasawneh and plaintiff's representatives having an exchange about rent. The documentary evidence, however, indicated that defendants breached their assumption of the lease by failing to pay rent in January 2019. In response, Khasawneh asked to speak with plaintiff's representative about the rent. Thus, at the time Khasawneh attempted to renegotiate the lease, LNY was in breach of the agreement. Thereafter, in March 2019, there was correspondence between plaintiff's representative Robert Saggese and Khasawneh. Specifically, Saggese asked for tax returns, sales figures, and the amount of the reduction of rent requested by Khasawneh. There was no indication that the parties ever entered into a new or modified lease agreement or that any such negotiation obviated or cured defendants' breach of the failure to pay rent that occurred in January 2019. Additionally, in March 2019, Khasawneh apparently raised the water damage issue with plaintiff. But, defendants failed to cite any provision of the contractual documents that water damage would alleviate its rental obligation. Although defendants may have attempted to renegotiate the lease terms, there was no indication that an agreement was reached. Therefore, this correspondence did not preclude summary disposition in plaintiff's favor.

## B.  DOCUMENTARY EVIDENCE OF LOSSES

Defendants next allege that plaintiff failed to produce verifiable documents, through a paper ledger, regarding the amount of rent they paid, and plaintiff's representative Lisa Shaffer, a senior account specialist, acknowledged that there were errors in the calculation of damages. Defendants further submit that they only owed $28,000 in rent for the time that they occupied the premises.  We disagree.

On February 20, 2019, Shaffer sent correspondence to Khasawneh indicating that the account was in default, and this e-mail contained an itemization of the outstanding rent, insurance, taxes, utilities, and fees.  Additionally, when moving for summary disposition, plaintiff presented an itemized list of the fees due and owing under the terms of the lease through June 30, 2019 ($28.585.19), and the amount of accelerated rent through January 31, 2025 ($321,270.25).  In her deposition, Shaffer acknowledged that Khasawneh sent her an e-mail wanting to discuss a renegotiation of lease terms.  Nevertheless, Shaffer testified that she had no authority to renegotiate the lease; she could only offer to divide the lease payments into thirds.  She further acknowledged that she did not produce a document delineating the payments made by defendants, but noted that she could generate a paper copy.  Shaffer admitted that she made an error in her calculations, but noted that it occurred because notices of unpaid rent were not sent to defendants.  However, this omission caused a reduction in damages in defendants' favor.

Although defendants contend that plaintiff failed to produce the actual paper ledger underlying the summation of damages, defendants do not dispute the calculation of the rental amount or the method used to calculate damages.  Additionally, defendants failed to cite authority that the documentation submitted coupled with the deposition testimony was insufficient to support the damage award.  More importantly, defendants did not dispute the amount owed, but rather, asserted that they should only be responsible for the rental payments during their period of occupancy without providing legal authority in support.  The failure to cite authority to sustain a position results in the abandonment of the issue on appeal.  *King v Mich State Police Dep't*, 303 Mich App 162, 176; 841 NW2d 914 (2013).  Thus, this claim of error does not entitle defendants to appellate relief.

## C.  FAILURE TO EXERCISE DUE DILIGENCE

Defendants next submit that summary disposition was improper because plaintiff failed to require them to submit financial documentation and ensure that they were capable of entering into and meeting the rental obligations under the terms of the lease.  We disagree.

Khasawneh was never deposed and did not present an affidavit, and therefore, his reasons for assuming the lease and guaranteeing the obligation of the original lease party, Daifi, are unknown.  Although defendants contend that plaintiff should have investigated defendants' financial records and ensured that they could meet their rental obligations, the elements of a contract are that the "parties [are] competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation."  *McCoig Materials, LLC*, 295 Mich App at 694 (quotation marks and citation omitted).  Because Khasawneh was purportedly a college professor, it was unclear whether defendants could provide financial documentation regarding prior business ventures and available capital, if such documentation even existed.

Moreover, defendants arguably would have requested such financial information from Daifi to determine the propriety of agreeing to the guaranty and accepting the assignment from Daifi. Because the contract elements did not require that plaintiff advise defendants regarding their business decisions, this claim of error does not entitle them to appellate relief.

## D. NOTICE OF SIGNIFICANT WATER DAMAGE

Defendants next submit that plaintiff failed to notify them of the water damage and repeatedly failed to fix it after being apprised of the condition in accordance with section seven of the original lease. Defendants contend that plaintiff's failure to make the repairs constituted the first substantial breach and absolved them of their obligations under the lease. We disagree.

Article VII of the original lease governed building maintenance, and Section 7.01 entitled "Repairs" stated in pertinent part:

> Landlord shall not be required to make any repairs or improvements of any kind upon the Demised Premises except for necessary exterior or structural repairs, provided that if such necessary exterior or structural repairs are required due to Tenant's acts or omissions, or those of Tenant's agents, employees, or contractors, then Tenant shall be responsible for the costs of such repairs or improvements. From and after the Possession Date, Tenant shall, at its own cost and expense, take good care of and make necessary non-structural repairs to the interior of the Demised Premises, and the fixtures and equipment therein and appurtenances thereto[.]

In the present case, there was no indication that defendants raised the issue of water damage until they failed to pay rent. Jason Nesler, plaintiff's property manager, testified that once he was apprised of the water damage, he contacted a roofer and contractor to address it. Ultimately, however, neither contractor engaged in any repairs because the water leak did not arise from exterior or structural repairs. Nesler opined that the water damage was caused by the water used in the hookah business.

The documentary evidence from plaintiff's representatives did not indicate that defendants complained of the building condition and water damage until the failure to pay rent arose. Although the lease limited plaintiff's liability for premises maintenance, defendants failed to present any evidence that the water damage arose from the exterior or structure and thereby invoked an obligation on plaintiff to perform the repair. Therefore, the trial court did not err in granting summary disposition in favor of plaintiff.

## E. LACHES

Defendants submit that the trial court erred in granting summary disposition to plaintiff because of laches. Specifically, defendants agreed to the consent judgment in district court in May 2019, and returned the key to plaintiff on June 3, 2019. Despite relinquishing the premises, plaintiff did not immediately file suit but waited until March 12, 2020, to file the complaint for the outstanding and accelerated rent. Therefore, laches barred plaintiff's claims. Again, we disagree.

A trial court's application of equitable principles is reviewed de novo. *Twp of Yankee Springs v Fox*, 264 Mich App 604, 611-612; 692 NW2d 728 (2004).

> The doctrine of laches is concerned with unreasonable delay that results in "circumstances that would render inequitable any grant of relief to the dilatory plaintiff." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 503-504; 608 NW2d 105 (2000). The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant. *Gallagher v Keefe*, 232 Mich App 363, 369; 591 NW2d 297 (1998). Laches does not apply unless the delay of one party has resulted in prejudice to the other party. *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 97; 572 NW2d 246 (1997). " 'It is the effect, rather than the fact, of the passage of time that may trigger the defense of laches.' " *Id.*, quoting *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 571, 578; 485 NW2d 129 (1992). The defendant has the burden of proving that the plaintiff's lack of due diligence resulted in some prejudice to the defendant. *Gallagher*, [232 Mich App at] 369-370. [*Id.*]

In the present case, defendants failed to meet their burden of demonstrating a lack of due diligence that caused them to suffer prejudice. Laches may apply when an unreasonable delay coupled with a change in condition renders it inequitable to enforce the claim against defendants. Plaintiff waited nine months to file the action for breach of contract and guaranty. There is no indication that defendants changed their position in the nine months after they vacated the premises. Furthermore, plaintiff may have delayed the litigation while marketing the property in an attempt to secure a new tenant and mitigate its damages. Defendants did not submit any documentary evidence to support their claim of laches. Thus, this claim of error is without merit.

## F. RECONSIDERATION

The trial court did not abuse its discretion by denying defendants' motion for reconsideration. *Shivers*, 339 Mich App at 377. Defendants merely raised the same arguments previously addressed and did not provide documentary evidence to create a factual issue precluding enforcement of the contract. MCR 2.119(F)(3).

## IV. ACCELERATION CLAUSE

Defendants submit that the trial court erred in enforcing the acceleration clause because it was unconscionable. We disagree.

The lease agreement gave plaintiff as the landlord remedies in the event of a default by the tenant. Section 21.02(c) allowed plaintiff to treat "all or any part of the Rent reserved hereunder as immediately due and payable."

Defendants contend that the acceleration clause was unconscionable because it shocks the conscience. In *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 140-141; 706 NW2d 471 (2005), the plaintiff filed a wrongful termination suit. The defendant, however, moved for summary disposition of the complaint, noting that the plaintiff's employment application limited

the period of limitations to six months. The trial court applied the shortened six-month period of limitations and granted the defendant's dispositive motion. *Id*.

This Court acknowledged that it was precluded from examining whether the period of limitations was reasonable, noting that contracts were to be enforced as written unless a provision would violate law or public policy. *Id*. at 141-142. With regard to the plaintiff's claim that the provision was unconscionable, this Court stated:

> In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.
>
> In the present case, [the] plaintiff did not present any evidence that he had no realistic alternative to employment with [the] defendant. Therefore, while [the] plaintiff's bargaining power may have been unequal to that of [the] defendant, we cannot say that [the] plaintiff lacked any meaningful choice but to accept employment under the terms dictated by [the] defendant. Furthermore, the six-month period of limitations is neither inherently unreasonable, nor so extreme that it shocks the conscience. Consequently, [the] plaintiff failed to establish that the contractually modified period of limitation was either substantively or procedurally unconscionable.
>
> Finally, [the] plaintiff contends that he did not knowingly waive the statutory three-year limitations period applicable to civil rights claims. This argument is unavailing. The law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has not read the agreement. [*Id*. at 143-145 (citations omitted).]

The general rule is that acceleration clauses may be enforced. *Gorham v Denha*, 77 Mich App 264, 269; 258 NW2d 196 (1977). Although the amount of the rent accelerated may be high because of the duration of the lease, defendants failed to present any evidence addressing unconscionability. That is, Khasawneh offered no evidence that he was a weaker party with no realistic alternative but to accept the lease terms. Khasawneh was not deposed and did not present any evidence delineating his business experience, his reason for assuming the lease for Daifi, and his knowledge of the terms of the lease, assignment, and guaranty. Khasawneh signed the assignment and guaranty, which refer to the lease, and he is held to the contract terms even if he

did not read the documents. *Clark*, 268 Mich App at 144-145. The failure to meet the procedural unconscionability ends the inquiry. Defendants failed to meet the test of unconscionability.[4]

## V. MITIGATION OF DAMAGES

Despite defendants' argument to the contrary, we conclude that the trial court did not err in granting summary disposition because defendants failed to create a genuine issue of material fact regarding the issue of mitigation of damages.

"Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998).

> Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided. [*Id.* (further citation omitted).]

The failure to mitigate damages is an affirmative defense and the burden of proof lies with the defendant. *Fothergill v McKay Press*, 374 Mich 138, 140; 132 NW2d 144 (1965). Thus, although a plaintiff has a duty to mitigate its damages, the defendant bears the burden of proof on that issue. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 539; 854 NW2d 152 (2014); *Froling v Bischoff*, 73 Mich App 496, 499-500; 252 NW2d 832 (1977). Whether a plaintiff used reasonable means to minimize the damages is generally a question of fact for the jury when considering the particular circumstances of each case. *Morris*, 459 Mich at 273. But when reasonable minds could not differ on the legal effect of the facts, the issue may be resolved as a question of law. See *Milot v Dep't of Transp*, 318 Mich App 272, 276; 897 NW2d 248 (2016).

In the present case, plaintiff moved for summary disposition of its claims for breach of contract and breach of guaranty. To support its motion, plaintiff submitted the deposition testimony of Robert Saggese, plaintiff's senior leasing representative for 21 years. In that capacity, Saggese was responsible for obtaining and securing new tenants for plaintiff's shopping centers and handling renewals of existing clients. Once the keys and possession were returned to plaintiff, the premises was measured to market the size of the space and it was placed back into leasable or "broom clean" condition. In order to obtain new tenants, Saggese sent weekly e-mail blasts to local brokers, placed the property on online platforms such as CoStar and LoopNet to market the property's availability, placed "for lease" signs on and near the property, placed lock boxes on the front door to facilitate tours of the space, and canvassed nearby shopping centers for tenants seeking to move or open a new location. At the time of Saggese's deposition, the property had remained vacant for two years. Saggese could not give an exact timeline for rental of a property, stating that it could take one to ten years to rent a space.

---

[4] Additionally, defendants did not establish substantive unconscionability.

Plaintiff also presented the deposition testimony of Lisa Shaffer, plaintiff's senior account specialist. She sent an e-mail to defendants notifying them that their account was past due and requested payment of the balance. The deposition of plaintiff's representative Shari Crawford disclosed that she prepared a ledger of the outstanding account to include the monthly rent, taxes, insurance, and fees as well as the acceleration of the lease rent due. Crawford opined that the amount due at that time was $351,022.82. Crawford testified that the rent was not included in the total for the period between June and October of 2019 because plaintiff stopped billing defendants. However, Crawford could correct the system by accessing the ledger and manually making the changes. Finally, Nesler, plaintiff's property manager, contacted both a roofer and a construction manager to examine the property after learning of the water complaint. But neither contractor found any defects in the roof or building for which plaintiff maintained repair responsibility.

The lease contained the following provision addressing repair, stating in pertinent part:

Landlord shall not be required to make any repairs or improvements of any kind upon the Demised Premises except for necessary exterior or structural repairs, provided that if such necessary exterior or structural repairs are required due to Tenant's acts or omissions, or those of Tenant's agents, employees, or contractors, then Tenant shall be responsible for the costs of such repairs or improvements. From and after the Possession Date, Tenant shall, at its own costs and expense, take good care of and make necessary non-structural repairs to the interior of the Demised Premises and the fixture and equipment therein and appurtenances thereto[.]

Thus, Nesler testified that the repair provisions placed on plaintiff, as the landlord in the lease, were not invoked.

Defendants contend that plaintiff failed to mitigate its damages because the premises were not leasable as the result of the water damage. Defendants further claim that "email blasts" were insufficient to mitigate the damages and successfully lease the premises. To support their claim, defendants submitted poor copies of photographs of the interior of the rental space.

We conclude that defendants did not create a genuine issue of material fact regarding mitigation of damages upon which reasonable minds would differ. Again, once a party makes and supports a motion for summary disposition under MCR 2.116(C)(10), the adverse party may not rest on the mere allegations or denials in the pleadings, but must set forth specific facts showing a genuine issue for trial supported by documentary evidence. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 348-349; 941 NW2d 685 (2019). Plaintiff presented documentary evidence through the testimony of its representatives that the lease required it to maintain the exterior structures of the lease premises. Although defendants reported a water leak, plaintiff's contractors did not attribute any water condition to the structures that plaintiff was required to maintain. Defendants merely submitted photographs and did not offer an affidavit or deposition testimony by a contractor to dispute the testimony proffered by plaintiff's representative. Although defendants submit that the mitigation efforts were limited to e-mail blasts, they presented no documentary evidence to dispute Saggese's testimony. Additionally, defendants did not submit any documentary evidence to demonstrate that the property was not in leasable condition. Under

the circumstances, defendants failed to meet their burden of showing that plaintiff failed to mitigate its damages or to create a genuine issue of material fact for resolution by a jury.

## VI. DUE PROCESS OF LAW

Lastly, we conclude that the trial court did not deprive defendants of due process of law by granting plaintiff's renewed motion for summary disposition.

As already mentioned, a motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield*, 338 Mich App at 449. The objective of MCR 2.116(C)(10) is to avoid extensive discovery and an evidentiary proceeding when a case may be quickly resolved as a matter of law. *Scalise v Boy Scouts of America*, 265 Mich App 11, 20; 692 NW2d 858 (2005). Additionally, the question of the proper interpretation of a contract presents a question of law subject to de novo review by the appellate court. *McCoig Materials, LLC*, 295 Mich App at 694. A contract is deemed unambiguous even if inartfully worded or clumsily arranged when it fairly discloses one interpretation. *Id*.

Whether a party was furnished due process presents a question of law. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Under the federal and state constitutions, no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Due process is a flexible concept that requires the provision of fundamental fairness. *Al-Maliki*, 286 Mich App at 485. "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). The notice and opportunity to be heard must be before an impartial decision maker. *Charter Twp of Ypsilanti v Dahabra*, 338 Mich App 287, 297; 979 NW2d 725 (2021). To fulfill the procedural safeguards, the opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Bonner*, 495 Mich at 235. The opportunity to be heard does not require a full trial-like proceeding, but rather, a hearing that gives a party the chance to know and respond to the evidence. *Hanlon v Civil Service Comm*, 253 Mich App 710, 723; 660 NW2d 74 (2002); *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*In re Londowski*, 340 Mich App 495, 509; 986 NW2d 659 (2022), quoting *Mathews v Eldridge*, 424 US 319, 334-335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

In *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 549-551, 899 NW2d 408 (2017), this Court concluded that the circuit court's sua sponte grant of summary disposition resulted in a due process violation. Specifically, the plaintiff, Mary Ann Lamkin, filed a complaint, acting *in propria persona*, against the township's board of trustees and zoning administrator claiming that they unlawfully failed to pursue a zoning violation against a neighbor unlawfully

-13-

operating an industrial business on property zoned as waterfront-residential. The plaintiff sought an order of mandamus, or superintending control or an order to show cause. Six days after the complaint was filed and before its service, the circuit court sua sponte dismissed the complaint citing MCR 2.116(C)(5), a party's lack of legal capacity to sue, and MCR 2.116(I)(1), the circuit court's authority to render summary disposition on the pleadings. The circuit court issued a written opinion and order, concluding that the plaintiff lacked standing to bring the complaint because she did not establish special damages not common to other similarly situated property owners. Citing this lack of standing, the circuit court concluded that it was not required to afford the plaintiff notice or an opportunity to be heard and sua sponte granted summary dismissal. *Id*. at 548-549.

Although this Court agreed that the plaintiff's claim did not allege special damages, it declined to conclude that the plaintiff was not entitled to notice and an opportunity to be heard. This Court stated:

> We begin with the process that [the plaintiff] and every other litigant is due. MCR 2.116(I)(1) states:
>
> > If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay.
>
> In *Al-Maliki v LaGrant*, 286 Mich App 483, 489; 781 N2d 853 (2009), this Court recognized that under MCR 2.116(I)(1), "the trial court has the authority to grant summary disposition sua sponte . . . ." We emphasized, however, that "the trial court may not do so in contravention of a party's due process rights." *Al-Maliki*, 286 Mich App at 489.
>
> "[T]here can be no question that, at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2s 380 (2014). This basic and fundamental concept indisputably applies in the context of summary proceedings; this Court so held quite clearly in *Al-Maliki*. Sua sponte motions for summary disposition are permitted under the court rules, but no exception to basic due-process requirements exists in MCR 2.116(I)(1) or elsewhere. "It is a matter of simple justice in our system for a party to be given fair notice and an opportunity to be heard before the boom is lowered." *DKT Mem Fund Ltd v Agency for Int'l Dev*, 281 US App DC 47; 887 F2d 275, 301 n 3 (1989) (Ginsburg, J., concurring in part and dissenting in part).
>
> * * *
>
> Here, the circuit court's failure to notify [the plaintiff] that it was contemplating summary disposition of her claims constitutes a fatal procedural flaw necessitating reversal. [*Lamkin*, 318 Mich App at 549-551 (footnote omitted).]

The *Lamkin* panel further noted that the court rules governing summary disposition invoke the production of proofs to support such issues as standing with facts followed by a commensurate

-14-

evidentiary response. Moreover, the circuit court's race to dismiss the case prevented this Court from having a substantive record to review. Consequently, this Court vacated the order of summary disposition and remanded with the parties given the opportunity to develop a reviewable record before entering a judgment, summary or otherwise. *Id*. at 551-552.

In this case, there is no indication that defendants were deprived of due process of law. Instead, they were given notice and an opportunity to be heard. Specifically, after plaintiff filed its initial motion for summary disposition, defendants responded that the motion should be denied as premature before the parties engaged in discovery. When the parties appeared at oral argument, the trial court indicated that it was ready to reach a decision, but in light of the parties' agreement to conduct additional discovery consisting of a deposition of one of plaintiff's employees, it agreed to adjourn the hearing. After the additional employee was deposed and all of the deposition transcripts were produced, plaintiff renewed its motion for summary disposition. Defendants filed a new response. And, despite claiming that Khasawneh never saw the original lease agreement, that plaintiff engaged in a renegotiation of rental terms, and that defendants protested the payment of rent in light of plaintiff's alleged first substantial breach as a result of water damage, Khasawneh did not file an affidavit or provide deposition testimony, or other documentary evidence to support the narrative allegations raised in their response.

Although the question presented an issue of contract construction as to the lease, the assignment, and the guaranty, defendants did not contest the terms of the documentation, but rather, claimed that there were factual issues in light of the correspondence between the parties and the deposition testimony. Again, the general rule is that contract construction presents a question of law when the contract is unambiguous. *McCoig Materials, LLC*, 295 Mich App at 694. Further, parol evidence may not be utilized to contradict an unambiguous contract. *Dunn*, 303 Mich App at 776. Although Khasawneh purportedly did not examine the original lease and allegedly sought to negotiate new lease terms, he did not submit an affidavit, deposition testimony, or other documentary evidence to support those assertions.

After the renewed motion for summary disposition and response were filed, the trial court gave defendants a second opportunity to be heard. Again, defendants submitted that sufficient factual issues were raised to preclude summary disposition and to proceed to trial. The trial court disagreed and granted plaintiff's renewed motion.

Defendants submit that, the trial court's expression that it was ready to rule at the initial hearing and the repetition of this statement at the second hearing demonstrate that it was biased and did not provide them with due process of law. Because the issue of contract construction presented a question of law and defendants sought to avoid the language of the documentation through deposition testimony and unsupported narratives, the trial court could have appropriately rendered its determination at the initial hearing. The trial court's preliminary expression of an opinion of the case did not reflect a denial of due process when defendants were given notice and an opportunity to be heard. The purpose of summary disposition is to avoid a trial when a matter may be resolved as a matter of law. Accordingly, the trial court's decision to grant summary disposition after allowing additional discovery, receiving two sets of dispositive motion pleadings, and conducting two hearings did not deprive defendants of due process of law. Unlike the plaintiff in *Lamkin*, the trial court gave defendants the opportunity to engage in discovery despite the plain language of the contract, gave them two opportunities to oppose plaintiff's motions for summary

disposition, and held two hearings on the matter. Under these circumstances, the trial court's decision to grant summary disposition to plaintiff did not deny defendants due process.

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).


/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Anica Letica